UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PHILLIP BROWN                                        CIVIL ACTION NO. 11-cv-1313

VERSUS                                               JUDGE FOOTE

LOUISIANA STATE PENITENTIARY          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Phillip Brown ("Petitioner") of two counts of second degree murder in connection with a drive-by shooting. His convictions and concurrent life sentences were affirmed on direct appeal. State v. Brown, 965 So.2d 590 (La. App. 2d Cir. 2007), writ denied, 976 So.2d 174 (La. 2008). He also pursued a state post-conviction application. Petitioner now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended the petition be denied.

### Relevant Facts

Members of two gangs, one from the Hollywood Heights area of Shreveport and the other from the Cedar Grove area, exchanged gang signs and threats at a pep rally at Woodlawn High School. Petitioner was associated with the Cedar Grove group.

A couple of days later, Petitioner was in a group leaving a skating rink when his group exchanged words with Randy Wilson and some others. Wilson fired shots in their direction. Later, back at Woodlawn High, a fight broke out between members of the gangs. The

assistant principal chased Petitioner and some other men away from campus. A man connected to the Hollywood group fired a shot, and a bystander from Cedar Grove was hit in the leg.

Later that afternoon, Petitioner and several other young men from the Cedar Grove area were gathered outside a home on West 76th Street. A car containing members of the Hollywood group drove past, and shots were fired. A witness said that Petitioner fired shots either at the car or in the air. Another denied that the Cedar Grove group returned fire. No one was injured.

Later that evening, around 5:00 p.m., a witness heard Petitioner and others discussing the fight at Woodlawn and making a plan to retaliate against Randy Wilson, who they said was a member of the Hollywood group and had fired shots at them at the West 76th Street home. Some of the group dressed in black clothes and hoods, and they drove away in a white Honda car. They first drove to Hattie Perry Park, hoping to retaliate against Wilson. The attempt was thwarted because the police were at the park arresting the suspected shooter in the Woodlawn incident.

At around 9:00 p.m. that night, the white Honda approached a home near Hattie Perry Park where several members of the Hollywood group were gathered. Those in the yard included the targeted Randy Wilson. Petitioner was in the front passenger seat. He and others in the car were armed. Occupants of the Honda fired numerous shots from the sunroof and rear windows of the car toward those gathered in the yard. Randy Wilson was injured

by a shot to the left arm, 15 year-old Chiquita Chambers (whose brother had been arrested earlier for the shooting at Woodlawn) and 18 year-old Jermichael Lewis were killed. A witness reported that Petitioner said later that he and co-defendant Courtney Beaner had fired shots, the girl was at the wrong place at the wrong time, and they had wanted to kill Wilson. Another witness testified that all three men in the car fired guns at the group of people.

      The police investigation led to a search of the house where Petitioner and the others in his group were heard making their plans. The search revealed two .380 caliber semi-automatic pistols, one a Lorcin and the other a Bryco. A firearms expert testified that the bullet recovered from Chiquita's body was fired from the Bryco, and six of the .380 casings recovered at the crime scene were fired from the same pistol. It was determined that Beaner was armed with the Bryco. Five other .380 casings at the crime scene were fired from the Lorcin pistol. The bullet recovered from Lewis's body was fired by a .40 caliber semi-automatic pistol, as were six .40 caliber casings found at the scene. Police never found a .40 caliber weapon.

      After Petitioner was arrested, he made a statement and admitted his involvement. He said that he had been the target of gunfire earlier in the day and heard Wilson was the shooter. "Everybody" decided to "go shoot." He was in the front passenger seat of the Honda and fired a .380 semi-automatic pistol out of the sunroof.

**Sufficiency of the Evidence**

Petitioner was convicted of second-degree murder, which includes the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm or (2) when the offender is engaged in the perpetration or attempted perpetration of assault by drive-by shooting, even though he has no intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Petitioner argues, as he did on direct appeal, that the evidence was insufficient because of lack of proof of specific intent and no testimony linking a bullet fired by him to either of the two bodies. Petitioner also argues that the homicides were justifiable as self-defense.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

The state appellate court noted that the Louisiana law of principals provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. As for specific intent, state law allowed it to be inferred from the act of pointing a gun and firing at a person whether or not the shooter had intent to hit a particular person or several people. The court also referenced the doctrine of transferred intent. It recognizes that when a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills another person, if the killing would have been unlawful against the intended victim, then it would be unlawful against the person actually shot even though that person was not the intended victim.

There was evidence from which a reasonable juror could find that Petitioner was a principal in a retaliatory, drive-by shooting in which he fired shots and two persons were killed. That was an entirely reasonable application of Jackson to the facts of this case. It is also consistent with other decisions that have held that "[a] defendant who is a principal in a drive-by shooting can be convicted of second degree felony murder even though the fatal

shot was fired by a companion acting in concert with the defendant in the commission of the shooting." State v. Mason, 109 So.3rd 429, 434 (La. App 2d Cir. 2013).

The same is true with respect to the state court's assessment of the self-defense claim. Louisiana law provides that a homicide is justifiable when committed by one who reasonably believes he is in "imminent danger of being killed or receiving great bodily harm" and that the homicide is necessary to save himself. Petitioner pointed to evidence that Randy Wilson had shot at him and made death threats on previous occasions. The state court characterized this argument as falling "somewhere between depressing and offensive" given the long gap in time between the afternoon attacks by Wilson and the retaliatory drive-by several hours later. There was no imminent threat of harm to Petitioner when he and the others in the Honda crept up on the unsuspecting victims and opened fire. The state court's application of Jackson to the facts was quite reasonable . There is no basis for habeas relief with respect to the sufficiency of the evidence.

**Other Crimes Evidence**

The State filed a pretrial motion to introduce other crimes evidence pursuant to L.C.E. art. 404(B) regarding the gang membership of various persons involved, the exchange of gang signs, and the fight and shootings that led up to the murders. Tr. 487. Judge Scott Crichton held a hearing (Tr. 1248), at the end of which the motion was taken under advisement. Tr. 1308-09. Minutes indicate that a ruling was signed by the judge that granted

the motion in all respects (Tr. 4-5) but the State has not cited to the location of that ruling in the record, and the court has not been able to locate it.

Petitioner complained about the admission of the evidence on direct appeal. The appellate court reviewed state jurisprudence that considers evidence of gang affiliation to be prejudicial when it is not relevant to elements of the crime. It found that in this case, however, there was clear and convincing evidence of Petitioner's gang affiliation and participation in gang-related altercations that were relevant to show his motive to injure the intended victim, who was affiliated with a rival gang, who had argued with and fired on Petitioner. State v. Brown, 965 So.2d at 586, 88.

When Petitioner made his "other crimes" arguments in his appellate brief (Tr. 1930-34) and application to the Supreme Court of Louisiana (Tr. 2001-04) he presented the argument solely in terms of whether the admission of the evidence violated Louisiana evidentiary rules and jurisprudence. He did not, therefore, exhaust a federal constitutional issue with respect to this claim. See Baldwin v. Reese, 124 S.Ct. 1347 (2004). Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief. Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders

the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007). Petitioner has not exhausted a federal due process claim. Even if he had, there is not an adequate showing that the state court's underlying evidentiary ruling was erroneous. It was quite reasonable for the state court to admit evidence of the rival affiliations and preceding attacks because of their significant and obvious relevance to Petitioner's motive and intent.

**Voluntariness of Confession**

Shreveport police arrested Petitioner for first-degree murder and obtained a statement from him after questioning at the police station. Petitioner argues that he did not validly waive his Miranda rights or give a voluntary statement. These issues involve two related issues of voluntariness.

A suspect has a right, recognized by Miranda, to be informed of his right to remain silent when faced with custodial interrogation, but the suspect may waive that privilege if the waiver is made voluntarily, knowingly and intelligently. Miranda v. Arizona, 86 S.Ct. 1602, 1612 (1966). The inquiry whether a Miranda waiver is coerced has "two distinct dimensions." Moran v. Burbine, 106 S.Ct. 1135, 1141 (1986). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Id. Second, the waiver must have

been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. The totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the requisite level of comprehension for a court to properly conclude the Miranda rights were waived. Id. See also Colorado v. Spring, 107 S.Ct. 851, 857 (1987).

A confession must also be voluntary to be admissible, and a judge must make a determination of voluntariness before the confession is admitted to the jury. Jackson v. Denno, 84 S.Ct. 1774 (1964). A finding of a voluntary and valid Miranda waiver is usually tantamount to a conclusion that the resulting confession was also voluntary. Missouri v. Siebert, 124 S.Ct. 2601, 2608 (2004).

Judge Crichton held a hearing and heard evidence from the police officers involved in obtaining a statement. Detective Hinderberger testified that he read Petitioner his Miranda rights from a standard form and asked if he understood them. Petitioner initially stated that he did not understand the part about being under arrest, but he did understand his legal rights. Petitioner was a 19-year-old junior at Woodlawn High School who said he could read and write the English language. He signed a Miranda waiver form by printing his name. There was no evidence of any threats, promises, or physical intimidation by the officers.

Petitioner argued that his waiver and statement were nonetheless involuntary because he was a high school student, there was no ascertainment of his claim to literacy, he was in a small office with sometimes three detectives, one detective told him it was "fine" if they

only intended to scare the victim, there was no discussion of responsive verdicts, and a detective told Petitioner at one point that he did not believe him. Tr. 1323-72.

The trial judge found that the officers were sometimes confrontational but did nothing impermissible. He found that Petitioner understood his Miranda rights and had initially engaged in a bit of a "cat and mouse game" by claiming to not understand why he had been arrested. He also noted that, at the end of the recorded statement, Petitioner denied that anyone had forced or coerced his statement or that he had been mistreated by any member of the police department. Based on that record, the court concluded that Petitioner was properly advised of his Miranda rights, which he waived and followed with a free and voluntary statement. Tr. 1374-75. The state appellate court reviewed in detail the record related to these issues and also concluded that the statement was admissible. State v. Brown, 965 So.2d at 588-89.

This claim was adjudicated on the merits in the state court, so federal habeas relief is available only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner repeats here the arguments he raised on direct appeal. They are no more persuasive now then they were before. There was simply no evidence of any police misconduct or that Petitioner did not understand the rights he waived. The evidence

was to the contrary.  It cannot be said that the state court's adjudication of this claim was an objectively unreasonable application of the applicable federal law.

**Excessive Sentences**

The mandatory sentence for second degree murder is life imprisonment without benefit of probation, parole, or suspension of sentence.  Petitioner argued on appeal that his concurrent life sentences were excessive.  He presented the issue to the state appellate court solely in terms of Louisiana Constitution Article I § 20 and related state law.  Tr. 1937.  The state appellate court discussed the ability of trial judges, under the Louisiana Constitution, to make a downward departure from a mandatory minimum sentence in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional.  The rule is invoked most often in habitual offender cases where the past offenses have not been very serious, but there are rare circumstances in which a mandated sentence for a single crime like aggravated rape or murder could be altered.

The appellate court found that such a departure was not required in this case because nothing in the record showed that Petitioner was exceptional or that there were unusual circumstances present.  Petitioner fired a gun in a crowd during a drive-by shooting that resulted in the deaths of two bystanders.  The court characterized this as an appalling disregard for the sanctity of human life and deserving of mandatory life sentences.  State v. Brown, 965 So.2d at 591. Petitioner repeated his state law arguments in his petition for supervisory writ filed with the Supreme Court of Louisiana.  Tr. 2006.

A claim presented on habeas must first be presented to the state court within a federal constitutional framework. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011), citing Baldwin v. Reese, 124 S.Ct. 1347 (2004). The State notes that Petitioner did not present his sentencing claim as a federal one. That is correct, and it is a sufficient reason to deny relief on the claim. Habeas courts do not correct issues of state law.

Even if the presentation in state court had exhausted a federal claim, the claim would lack merit. Petitioner has not identified a Supreme Court decision that held that a mandatory life sentence for an adult convicted of two counts of murder is unconstitutionally excessive. The Court has, however, upheld a mandatory life sentence for a recidivist whose third felony conviction was obtaining $120.75 by false pretenses and whose prior crimes were similar property crimes. Rummel v. Estelle, 100 S.Ct. 1133 (1980). The Court has also upheld a mandatory life sentence without possibility of parole for a conviction of possession more than 650 grams of cocaine, despite a lack of consideration of mitigating factors such as no prior felonies. Harmelin v. Michigan, 111 S.Ct. 2680 (1991). Habeas challenges to Louisiana life sentences for murder have been rejected based on those decisions. See Beaner v. Louisiana State Penitentiary, 2013 WL 4411093 (W.D. La. 2013); Holmes. v. Tanner, 2011 WL 5869396, **6-7 (E.D. La. 2011); and Taylor v. Cain, 2007 WL 1805668, **20-21 (E.D. La. 2007). Petitioner is unable to demonstrate that the adjudication of his excessive sentence claim involved an unreasonable application of clearly established Supreme Court precedent, so relief is not available on this claim.

**Use of Transcript**

Jamarcus Monroe testified at the trial of co-defendant Courtney Beaner and was cross-examined by Beaner's counsel. Jamarcus Monroe was not available at the time of Petitioner's trial, and counsel agreed to have his testimony from the Beaner trial read to the jury. Tr. 1646-47. In that testimony, Monroe said that he was in the Honda at the time of the shooting and witnessed Petitioner and the others fire their guns. He claimed, however, that they only fired into the air. Tr. 1657-58.

Petitioner argued in his post-conviction application that trial counsel was ineffective when he participated in the reading of this prior testimony, which did not allow counsel to cross-examine the witness. Tr. 2045-50. The State responded with an affidavit from trial counsel, Richard Goorley, which explained that the decision he faced was whether to go to trial with a transcript of Jamarcus Monroe's testimony read into the record or see the trial continued to a date when Monroe was available to testify in person. Goorley said that he elected to agree to have the transcript read because the focus of that testimony was on the actions of Courtney Beaner rather than Petitioner, the transcript was a "known quantity" that he could read before agreeing to its presentation, and he was comfortable with the cross-examination conducted by experienced defense counsel Peter Flowers, who represented Beaner. He knew the transcript would hold no surprises, but having the witness appear live would present risk of the unknown. Tr. 2173-75.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The trial court reviewed the affidavit from counsel and determined that his action was not ineffective but a calculated, professional, tactical decision to choose the presentation of testimony least damaging to his client. Tr. 2178-79. The appellate court rejected the claim and agreed that the decision was "a tactical decision intended to control and avoid unknown and possibly more damaging testimony from the examination of a live witness." Tr. 2282.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

The state court adjudication of this claim was entirely reasonable. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. Strickland, 104 S.Ct. at 2065. Defense counsel gave sound reasons for his decision, which was a quite reasonable strategy in light of the facts. Petitioner did not overcome the logic of those reasons or the presumption of reasonableness that accompanied counsel's decision. There is no basis to determine that the state court decision was an objectively unreasonable application of Strickland. This claim must be denied.

**Ineffective Assistance of Appellate Counsel**

The State requested argument, and it was scheduled. Petitioner's appellate counsel, Jared Franklin, filed a motion to waive oral argument. Counsel stated his belief that the brief he filed sufficiently set forth the issues and argument, and no other viable issues could be raised through argument. An order was granted that allowed counsel to waive his presence at argument. Tr. 1965-67.

Petitioner argued in his post-conviction application that counsel was ineffective for waiving argument. The trial court cited a letter from the appellate court that indicated more than 90% of criminal cases in that court are not orally argued. The trial court also observed that the appellate court had fully reviewed Petitioner's written arguments, which is evidenced by the detailed opinion on direct appeal. The court, accordingly, found no deficiency in appellate counsel's assistance. Tr. 2179-80. The appellate court summarily found that "counsel was not ineffective in submitting the case on briefs and waiving oral argument." Tr. 2282. The Supreme Court of Louisiana denied writs without comment. Tr. 2434.

An attorney's decision to waive oral argument does not automatically amount to ineffective assistance of counsel. Martin v. U.S., 2007 WL 5497196, *12 (E.D. Mich. 2007). The claimant must show that, had counsel acted as the client argues counsel should have, there is a reasonable probability the client would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006). Petitioner did not demonstrate what counsel would have gained had he insisted on oral argument that would give rise to a reasonable probability that he would have won his appeal.

Petitioner concedes that there is no decision holding it to be ineffective assistance to waive oral argument. That makes its virtually impossible for him to satisfy the Section 2254(d) requirement for habeas relief that the state court unreasonably applied clearly established federal law as established by the Supreme Court. Relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of July, 2014.



Mark L. Hornsby
U.S. Magistrate Judge